UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD WILSON,

                              Plaintiff,

                                                           DECISION AND ORDER

                                                           14-CV-6279L

                          v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

       On May 11, 2011, plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act, and supplemental security income under Title XVI. Plaintiff alleged an inability to work since June 30, 2010. (T. 14). His applications were initially denied. Plaintiff requested a hearing, which was held July 26, 2012 before Administrative Law Judge ("ALJ") Michael W. Devlin. ALJ Devlin issued an unfavorable decision on September 26, 2012, concluding that plaintiff was not disabled under the Social Security Act. That decision became the final decision of the Commissioner when the Appeals Council denied review on March 26, 2014 (T. 1-3). Plaintiff now appeals.

The plaintiff has moved, and the Commissioner has cross moved, for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the Commissioner's cross motion (Dkt. #12) is granted, plaintiff's motion (Dkt. #8) is denied, and the complaint is dismissed.

DISCUSSION

An ALJ proceeds though a prescribed five-step evaluation in determining whether a claimant is disabled within the meaning of the Social Security Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, the ALJ continues to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ proceeds to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, the ALJ's analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f).

The ALJ then turns to whether the claimant's RFC permits her to perform the requirements of her past relevant work. If so, the claimant is not disabled. If not, analysis

proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (*quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'"  *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (*quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

The same level of deference does not extend to the Commissioner's conclusions of law.  *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984).  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for

reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

The ALJ's decision discusses the bases for plaintiff's claim of disability at length, and identifies the record evidence supporting each of his findings. Upon a full review of the record, I believe that the ALJ applied the correct legal standards.

I also find that substantial evidence supports the ALJ's conclusion that plaintiff, then a fifty-year old man with a G.E.D. and past relevant work as a floor waxer, salad maker, polishing machine operator, construction worker, hospital cleaner and mental retardation aide, was not disabled, due to the ALJ's finding that the plaintiff was capable of performing sedentary work, limited to occasional climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, rarely reaching or lifting overhead with the arms, but able to frequently reach and handle with the dominant left arm. (T. 17). When presented with this RFC, and assuming that plaintiff had acquired from his past work the ability to compare, compute and compile data, work with various kinds of people, and work independently, vocational expert Julie Andrews testified that plaintiff could perform the positions of information clerk and telephone solicitor. (T. 20).

Plaintiff's treatment records reflect a history of pain and limited motion in both shoulders, arthritis of the right shoulder, low back pain and hypertension. The ALJ's finding concerning plaintiff's RFC is consistent with the medical evidence of record. As the ALJ correctly noted, plaintiff's treating physician provided no formal RFC assessment and none of plaintiff's examining physicians opined that he was disabled. A consultative physical examination by Dr.

4

George Alexis Sirotenko in August 2011 demonstrated that plaintiff had reduced range of motion in his lumbar spine and left shoulder, but otherwise had full range of motion in his spine and extremities, with no sensory or strength deficits.  In light of these findings, Dr. Sirotenko opined that plaintiff should not push, pull or lift objects of a greater than "moderate" weight, should avoid repetitive overhead use of his left arm, and would be mildly limited in activities involving the flexion, extension or rotation of his lumbar spine.  The ALJ gave significant weight to Dr. Sirotenko's opinion, and incorporated it into plaintiff's RFC.  (T. 19).

Plaintiff chiefly argues that the ALJ failed to properly assess, or incorporate into his RFC finding, a June 6, 2011 treatment note from plaintiff's treating physician, general practitioner Dr. Samuel Rosati, which stated that plaintiff was "mild[ly]" restricted from engaging in "repetitive bending [and] stooping" or lifting more than thirty pounds, due to back pain.  (T. 248, 302).  Initially, the plaintiff's RFC as determined by the ALJ is facially consistent with Dr. Rosati's restrictions, and limits plaintiff to only "occasional" balancing, stooping and/or crouching.  (T. 17).  In fact, the RFC as determined by the ALJ assumes limitations even greater than those indicated by Dr. Rosati in the treatment note on which plaintiff relies.  While Dr. Rosati observed that plaintiff has "normal range of motion" in his extremities and could lift up to thirty pounds, the RFC determined by the ALJ deferred to the more limited RFC described by examining physician Dr. Sirotenko, and restricted plaintiff to sedentary work (not lifting more than ten pounds), with limitations on the ability to reach and lift overhead with either arm.  (T. 302).

Plaintiff also argues that the ALJ breached his duty to develop the record fully by failing to obtain a formal RFC assessment from Dr. Rosati, and thus improperly relied, in part, on his

own interpretation of the "raw medical findings contained in [Dr. Rosati's] treatment notes." (Dkt. #8-1 at 15).

Inasmuch as plaintiff claims the ALJ should have engaged in additional evidence-gathering simply because the record fails to otherwise establish that plaintiff was disabled, "an ALJ does not have an affirmative duty to expand the record ad infinitum.  Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision."  *Walker v. Astrue*, 2012 U.S. Dist. LEXIS 138472 at *9 (W.D.N.Y. 2012).  Here, a record several hundred pages in length, documenting a consistent and largely unremarkable course of longitudinal and comprehensive treatment for back and shoulder pain over several years, along with the results of objective medical test results, provided a complete picture of plaintiff's physical condition.  Dr. Rosati's treatment notes do provide (in the context of specifying his work-related limitations) specific assessments of plaintiff's strength and range of motion relative to his spine and extremities.  These "raw medical findings" are stated in plain English (e.g., T. 302, "no repetitive bending stooping or living [greater than] 30 pounds") rather than medical jargon.  They require no creative "interpretation" to understand, and nowhere in the record is there any indication that plaintiff is functionally limited in ways, or to an extent, not otherwise reflected in his treatment notes, or that was overlooked in the opinions of examining or consulting physicians.  While it is unclear whether the ALJ requested an RFC assessment from Dr. Rosati and failed to receive a response, or whether he never requested one at all, plaintiff's contention that a formal RFC assessment from Dr. Rosati could or should have altered the outcome of his application is wholly speculative.

While under ordinary circumstances the lack of an RFC assessment by a treating physician might, by itself, present a sizeable gap in a plaintiff's record, I find that it does not do

6

so under the particular circumstances presented here.  The record before the ALJ was voluminous, comprehensive, consistent, and contained objective test results and regular treatment notes from plaintiff's treating physician, Dr. Rosati.  Those treatment notes identified and described plaintiff's work-related limitations in the relevant functional areas, and the report by examining physician Sirotenko on which the ALJ relied is consistent with (and even describes limitations more significant than) Dr. Rosati's treatment notes and informal opinions.  *See generally Iacobucci v. Commissioner*, 2015 U.S. Dist. LEXIS 84977 at *12-*13 (W.D.N.Y. 2015).

The Court also observes that plaintiff was represented by counsel before, during and after the hearing, and it appears that counsel likewise made no attempt to request or introduce a formal treating source statement, agreeing at the hearing that the record was complete.  (T. 56).  While an RFC assessment by a claimant's treating physician will almost always be the most relevant and authoritative source of information upon which an ALJ could rely in determining a claimant's RFC, I find that the ALJ's failure to obtain a statement from Dr. Rosati was, under the circumstances presented here, harmless.  *See e.g.*, *Tankisi v. Commissioner*, 2013 U.S. App. LEXIS 6545 (2d Cir. 2013) (remand not required despite ALJ's failure to obtain formal RFC assessments from treating physicians, where the record did contain a treating source's informal assessment of the claimant's limitations).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.  I find that the ALJ's determination of plaintiff's RFC is well-supported, and further note that the ALJ properly relied on testimony by a vocational expert that plaintiff's RFC permitted him to perform one or more positions existing at significant numbers in the local economy.

Based on the foregoing, I believe the ALJ followed the proper procedures and that his decision is supported by substantial evidence. I find no basis to modify it.

## CONCLUSION

The Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is granted, and plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied. The Commissioner's decision that plaintiff, Ronald Wilson, was not disabled, is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 6, 2015.